Statement of Facts.

## COMMONWEALTH v. LACKAWANNA I. & C. CO.

APPEALS BY PLAINTIFF AND DEFENDANT FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 6, 1889—Decided June 28, 1889.

[To be reported.]

(a) A coal and iron company, exercising the corporate powers with which it was invested, owned and operated coal and ore lands, and from the products manufactured, transported and sold iron and steel as a manufacturing company, having, also, a portion of its capital invested in bonds and mortgages, city lots and store-goods.

1. In such case, § 20, act of June 30, 1885, P. L. 193, exempts from the state tax imposed by § 4, act of June 7, 1879, P. L. 112, only so much of the corporation's capital as is employed in strictly manufacturing operations, as distinguished from that employed in mining operations, or invested in city lots and bonds and mortgages.

2. The fact that a portion of the capital of a manufacturing corporation is employed in other business operations, does not deprive the company of the exemption authorized by § 20, act of July 30, 1885, P. L. 193, as to its capital employed strictly in its manufacturing business.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 48, 49 May Term 1889, Sup. Ct.; court below, No. 43 March Term 1889, C. P.

On January 7, 1889, upon report made by the Lackawanna Iron & Coal Company, the auditor general and state treasurer made a settlement of account for taxes as follows:

For tax on capital stock, per act of June 7, 1879, for years ending first Monday of November, 1887 and 1888, as per report herewith filed.

1887.

Dividend, 15 per cent on capital stock, $3,000,000

Tax 7½ mills, (one half mill for each one per cent of dividend,) . . . . . . . $22,500

1888.

Dividend, 10 per cent on capital stock, $3,000,000

Tax, 5 mills, (one half mill, etc.,) . . . . $15,000

Due commonwealth, . . . $37,500

Thereupon the said company filed specifications of objections to the said settlement of account, which averred:

1. The act of June 7, 1879, P. L. 112, under authority of which the tax in the settlement hereby appealed from purports to have been charged, was, in so far as it imposed a tax upon the capital stock of manufacturing corporations, repealed by the twentieth section of the act of June 30, 1885, P. L. 193. The Lackawanna Coal & Iron Company is a manufacturing corporation, and there is not now, and was not at the date of the settlement of said account by the auditor general and state treasurer, any act of assembly authorizing the imposition of the tax charged in said settlement, or of any state tax upon said company, or upon its capital stock.

2. The act of June 7, 1879, in so far as it imposes a tax on capital stock, is in violation of § 1, article IX. of the constitution of Pennsylvania, which provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

3. The act of June 7, 1879, in so far as it imposes a tax on capital stock, is in violation of § 1, article XIV. of the amendment to the constitution of the United States, which provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

4. The account appealed from is erroneous, illegal and void, for the reason that for each of the years 1887 and 1888 it imposes a tax upon capital stock invested in bonds issued by the government of the United States, which said bonds and the capital stock whereby they are represented are not subject to the taxing power of the state of Pennsylvania.

On February 5, 1889, the parties submitted the cause to the decision of the court, without a jury, under the provisions of the act of April 22, 1874, P. L. 109, and the hearing being had, on May 6, 1889, the court, McPHERSON, J., filed the following decision:

Decision of Court below.

### FINDINGS OF FACT.

1. The defendant is a corporation of this commonwealth, incorporated by the act of April 5, 1853, P. L. 306. Supplements thereto were passed May 2, 1855, P. L. 398, and April 27, 1864, P. L. 631. All these acts are made part of this finding.

2. [During the tax years ending the first Monday of November 1887 and 1888, respectively, it had a capital stock of $3,000,000. Its principal business is the manufacture of steel rails : incident thereto it mines a considerable quantity of coal and iron ore.] [1]

3. Its capital stock represented the following property, all of which was reasonably necessary in the prosecution of its principal business :

Manufacturing plant, including build-
    ings, real estate, machinery, etc., the
    value of which was  .  .  .  $1,500,000
Coal property, the value of which was   500,000
Ore property, the value of which was   400,000
                        —————$2,400,000

It also represented the following
property, which has not been shown
to be reasonably necessary in the pros-
ecution of its principal business :
United States bonds, the value of
    which was   .  .  .  .   $500,000
                       —————$ 500,000

Other bonds and mortgages, the value
    of which was   .  .  .  .  $ 200,000
City lots, the value of which was   .  1,000,000
Store goods, the value of which was     80,000
                       —————$1,280,000

       Total valuation,   .  .  .    $4,180,000

4. During the first tax year named, it declared several dividends amounting to fifteen per cent, and during the second tax year, it declared several dividends amounting to ten per cent.

5. On January 8, 1889, the accounting officers made a settlement taxing the entire capital stock, under § 4, act of June 7, 1879, P. L. 114, and from this settlement the present appeal is taken.

### CONCLUSIONS OF LAW.

So much of the defendant's capital stock as is invested in United States bonds is not taxable by the state : Bank v. Commonwealth, 9 Wall. 353.

[The defendant argues, further, that its whole capital stock, however invested, is relieved from taxation by § 20, act of July 30, 1885, P. L. 199, simply because it is a manufacturing corporation. No doubt its principal business is that of manufacturing, but we cannot adopt its construction of the act of 1885.] [a] [In our opinion the twentieth section of that act was intended to operate simply on capital employed in manufacturing; the purpose being to free such capital from a burden believed to be hampering our own industries in the struggle for a market.] [5] It was hardly intended to relieve from taxation, capital, although belonging to manufacturing companies, which was not actually used in manufacturing, but was invested, as in the case before us, in interest bearing securities, in unnecessary real estate, or in a business not reasonably required by the principal corporate purpose. Language which relieves from taxation is to be strictly construed : Academy v. Philadelphia Co., 22 Pa. 496; Miller v. Kirkpatrick, 29 Pa. 226; Crawford v. Burrell Tp., 53 Pa. 219; and we therefore hold, following the effect of several previous decisions of this court, that the defendant is a manufacturing corporation, within the provisions of the act of 1885, only as to so much of its capital stock as it has shown to be thus employed.

The burden is upon it to make out its claim to the relief set up; if it fails, the capital stock tax of 1879 is properly collectible. It has thus failed with respect to the last three items of paragraph 3, and we must therefore decide a due proportion of its capital stock to be taxable. The fraction is $\frac{1,280,000}{4,180,000}$ or $\frac{64}{209}$ of $3,000,000, amounting to $888,038 and upon this sum the commonwealth is entitled to recover as follows :

| | |
|---|---:|
| A tax of 7½ mills for 1887, | $6,660.28 |
| A tax of 5 mills for 1888, | 4,440.19 |
| | $11,100.47 |
| Interest at 12 per cent from March 9, 1889, to May 6, 1889, | 210.90 |
| Attorney General's commission, | 555.00 |
| Total. | $11,866.37 |

for which sum we direct the prothonotary to enter judgment if exceptions are not filed according to law.

To the foregoing decision the commonwealth filed exceptions, alleging that the court erred:

1. In the finding of fact included in [  ] [1]

2. In not finding that the business of the corporation, during the tax years in question, was mining iron ore, making and manufacturing iron and steel, mining coal and quarrying limestone, and transporting and conveying the same, and such other objects as were necessary in the prosecution of said business, including the right to own timber and ore lands, and the actual ownership thereof, and also limestone lands, with the right to mine, quarry, remove and dispose of the minerals and limestone therefrom, and the mining and quarrying thereof: [2] citing § 4, act of April 5, 1853, P. L. 306; § 2, act of May 2, 1855, P. L. 398; § 2, act of April 27, 1864, P. L. 631.

3. In not finding that in the prosecution of its business, during the tax years in question, the company supplied from its own mines the lump coal used in its blast furnace, and sold the other sizes of coal mined by it; that out of a little over eight hundred thousand tons of coal mined, it sold about four hundred and fifty thousand tons; that it owned the stock of the ore mine in the state of New York, from which mine the ore was exclusively used at the works of the company at Scranton; and that it also procured ore and limestone from its property in New Jersey. [3]

4. In not finding that the Lackawanna Iron & Coal Company, was a corporation organized for the purposes of mining, quarrying and manufacturing, and was actually engaged in the prosecution of said purposes. [4]

5. In the conclusion of law embraced in [  ] [5]

6. In not holding that the twentieth section of the act of 1885 exempted from taxation such, and only such corporations, as are exclusively organized for and engaged in the business of manufacturing. [6]

7. In not holding that the capital invested in the coal property mentioned in the third finding of fact was subject to taxation. [7]

8. In not holding that the capital invested in the ore prop-

erty mentioned in the third finding of fact was subject to taxation.[8]

9. In not entering judgment for the commonwealth for the full amount of tax claimed.[9]

The defendant filed exceptions, alleging that the court erred:

1. In the conclusion of law embraced in [ ] [a]

2. In directing judgment to be entered against the company for $11,866.37.[b]

3. In not directing judgment to be entered in favor of the defendant.[c]

On May 18, 1889, the court overruled the exceptions filed by both parties, and directed judgment to be entered in accordance with the decision filed.

Thereupon the commonwealth took the appeal to No. 48, specifying that the court erred:

1–9. In overruling the plaintiff's exceptions.[1 to 9]

The defendant company took the appeal to No. 49, specifying that the court erred:

1–3. In overruling the defendant's exceptions.[a to c]

*Mr. John F. Sanderson,* Deputy Attorney General (with him *Mr. William S. Kirkpatrick,* Attorney General), for the Commonwealth:

1. It is true that the most extensive department of the defendant company's business was the manufacture of steel rails; that it consumed the products of its iron-ore mining and its quarrying operations, and the greater part of the coal resulting from its coal mining operations; and that the manufacture of steel rails is an operation requiring ore as a raw material, coal as fuel, and limestone as a part of the process of reducing the iron, as the result of which steel rails are produced. To say, however, that its mining and quarrying operations are necessarily incident to its manufacturing operations, is to deal merely with words. The substance of the case is, that the company, because it possessed a manufacturing franchise, was its own customer as to the operation of its mining and quarrying franchise, and that by reason of its enjoyment of the latter it was independent of the ordinary markets and means for supplying its raw materials.

2. It is the policy of recent legislation to strictly classify corporations, and to confine each to the exercise of the franchise pertaining to its particular class. This will be seen by reference to the corporation act of 1874. Here is a case where an exemption from taxation is alleged. Such an exemption must be strictly construed: Academy v. Philadelphia Co., 22 Pa. 496; Miller v. Kirkpatrick, 29 Pa. 226; Crawford v. Burrell Tp., 53 Pa. 219. An exemption from taxation of manufacturing corporations would, it is contended, include only such corporations as are exclusively organized for and engaged in the business of manufacturing. The exemption must be construed to include nothing more than its terms embrace. Quarrying companies are not exempted, and mining companies are not exempted; and a company that is both of these, and a manufacturing company in addition, must be excluded from that class of such companies which are thus strictly defined as manufacturing corporations.

3. The tests of exemption are two: (1) Is the corporation one exclusively organized for manufacturing purposes? (2) Is its capital so exclusively employed? The learned court below in the present case applied the second test, but not the first. The application of both, as insisted upon by the commonwealth, would have entirely excluded the defendant from the benefit of the exemption. The application of the second, as made by the court, has excluded a certain portion of its property, to wit: bonds, mortgages, city lots and store-goods. The court, however, included within the exempted portion the portion of its capital invested in the business of mining coal and iron-ore, and the capital invested in the land connected with such operations. These are independent enterprises: and, even if the portion of the capital invested in the manufacturing plant should be exempted, it is submitted that the portion invested in other enterprises should not be. International Nav. Co. v. Commonwealth, 104 Pa. 38, is to be distinguished.

*Mr. M. E. Olmsted*, for the Lackawanna I. & C. Co.:

1. Section 20, act of June 30, 1885, P. L. 193, repeals the laws imposing tax on capital stock, so far " as they apply to and affect manufacturing corporations." The attorney general would have the act construed as if it repealed the taxes only so

far "as they apply to corporations organized exclusively for manufacturing purposes, and whose capital is so exclusively employed." But the word, "exclusive," or, "exclusively," is not found in the statute. The term is "manufacturing corporations;" and the only thing to be determined is, whether the company in this case is or is not a manufacturing corporation. The general corporation act of April 29, 1874, P. L. 73, in division XVII., authorizes the incorporation of companies for "the manufacture of iron or steel or both, or of any other metal, or of any article of commerce from metal or wood, or both." And § 38 of the act, title, "Iron and Steel Companies," relates exclusively to corporations of division XVII., and clearly recognizes that, as necessary incidents of their manufacturing business, such corporations may be, and usually are, required to own land and mine their own coal and iron.

2. The character of a corporation is to be determined by the character of the principal business in which it is engaged. The revenue act of April 20, 1874, P. L. 68, provided, in its fourth section, that railroad and other transportation companies should pay a tax of six mills upon their capital stock. The fifth section provided that other corporations should pay a tax of three mills. The Pennsylvania Coal Company not only owned coal mines, but also owned nearly one hundred miles of railroad, in which it had invested over $2,000,000. The commonwealth claimed that as a railroad company it was subject to taxation at the higher rate of six mills, under the fourth section. Judge PEARSON, however, decided otherwise: Commonwealth v. Penna. Coal Co., 2 Pears. 404. And see International Nav. Co. v. Commonwealth, 104 Pa. 38; Lehigh Coal & Nav. Co. v. Northampton Co., 8. W. & S. 336; Schuylkill Nav. Co. v. Commissioners, 11 Pa. 202; Wayne Co. v. Canal Co., 15 Pa. 351; Railroad v. Berks Co., 6 Pa. 70; West Chester Gas Co. v. Chester Co., 30 Pa. 232.

## COMMONWEALTH'S APPEAL.

OPINION, MR. JUSTICE STERRETT:

The Lackawanna Iron & Coal Co., appellee in this case, is a domestic corporation, chartered by the act of April 5, 1853, and supplements of May 2, 1855, and April 27, 1864.

Section 4, of the original act, authorizes the company to hold

"lands not exceeding, at any one time, three thousand acres, with power to mortgage, sell, lease or otherwise dispose of the same or any part thereof ; " and provides that its capital " may be employed in mining iron-ore, making and manufacturing iron, mining coal and limestone, and transporting and carrying the same, and for such other objects as are necessary in the prosecution of said business."

Section 5 requires the company to report annually the amount of capital paid in, the number of acres of land held by it, the quantity of coal mined, and of iron manufactured and sold, etc.

Section 2, of the first supplement, authorizes the company to acquire, hold and enjoy certain timber and iron-ore lands, in Luzerne county, not exceeding five thousand acres; and also ore lands in the state of New York, not exceeding one thousand acres at any one time, and to mine, obtain and use the ores, timber and other products of said lands.

Section 2, of second supplement, authorizes the company to purchase, hold and dispose of such mineral lands in the state of New Jersey, and such limestone lands, not exceeding two hundred acres, in the counties of Monroe and Northampton, in this state, as the directors may deem advisable, with the right to mine, quarry, remove and dispose of said minerals and limestone.

During the tax years ending first Monday of November, 1887 and 1888, respectively, the company, exercising the corporate powers with which it is invested by the acts aforesaid, mined coal and iron-ore, quarried limestone, manufactured iron and steel, transported the same, etc. Its reports for same years show a full paid capital of $3,000,000, on which dividends were declared, as follows : for 1887, fifteen per cent, amounting to $450,000, and for 1888, ten per cent, amounting to $300,000. In stating its tax account with the commonwealth for those years, the proper accounting officers charged the company for each year, respectively, one half mill for each one per cent of dividend, aggregating $37,500. From that settlement the company appealed, alleging that under § 20 of the act of 1885, it was wholly relieved from the payment of capital stock tax. That section provides, " that the taxes laid upon manufacturing corporations by and under the revenue laws of this commonwealth be and the same are hereby abolished as to such corporations,

and the laws, under which such taxes are laid and collected, be
and the same are hereby repealed, so far, and so far only, as they
apply to and affect manufacturing corporations."

This case was tried by the court, without a jury, under the
act of 1874. The findings of the learned judge are not as full
and specific as they should have been, or as the evidence would
have warranted; but, in connection with other facts, about
which there is no dispute, we have sufficient data to enable us
to dispose of the main questions. Indeed, there was no con-
flict of testimony. In the main, the oral evidence was that of
Charles F. Mattes, called by the company. Among other
things, it was clearly shown that a considerable portion of the
coal mined by the company during the two years in question,
about 450,000 tons, alleged to be too small for its own use, was
sold at the mines for not less than $721,000.

In addition to the facts above stated, relating to the incorpo-
ration of the company, amount of its capital stock, dividends
declared for the years 1887 and 1888, etc., the learned judge
found as follows: ·

" 2. . . . . Its principal business is the manufacture of steel
rails : incident thereto it mines a considerable quantity of coal
and iron-ore.

" 3. Its capital stock represented the following property, all
of which was reasonably necessary for the prosecution of its
business :

Manufacturing plant, including build-
   ings, real estate, machinery, etc., the
   value of which was .   .   .   $1,500,000
Coal property, the value of which was   500,000
Ore property, the value of which was   400,000
                                                      $2,400,000."

" It also represented the following
property, which has not been shown to
be reasonably necessary in the prosecu-
tion of its principal business :
United States bonds, the value of
   which was   .   .   .   .   . $  500,000
Other bonds and mortgages,   .   200,000
City lots, the value of which was   . 1,000,000
Store goods, the value of which was   80,000—1,780,000."

       " Total valuation,   .   .         $4,180,000."

Having found that the capital stock was represented by the several items of property above specified and valued in the aggregate at $4,180,000, the learned judge rightly concluded that the company was not taxable, in any event, on so much of its capital as was invested in United States bonds: Bank v. Commonwealth, 9 Wall. 359. He also held it was not taxable on so much of its capital as was invested in its manufacturing plant, and also in coal and ore property which he considered reasonably necessary in the prosecution of its principal business as a manufacturing company, but he refused to further sustain the company's contention, and held that, as to the last three items, consisting of bonds and mortgages, city lots and store goods, aggregating $1,280,000, it was taxable. He accordingly found that the proportion of the capital invested in those three items was $888,038, and entered judgment for the taxes on that amount, with interest and attorney general's commissions.

As stated by the learned judge himself, the ground upon which the company was thus held liable was, that the section above quoted " was intended to operate simply on capital employed in manufacturing, the purpose being to free such capital from the burden believed to be hampering our own industries in the struggle for a market. It was hardly intended to relieve from taxation, capital, although belonging to manufacturing companies, which was not actually used in manufacturing, but invested, as in the case before us, in interest bearing securities, in unnecessary real estate, or in a business not reasonably required by the principal corporate purpose. Language which relieves from taxation is to be strictly construed: Academy v. Philadelphia Co., 22 Pa. 496; Miller v. Kirkpatrick, 29 Pa. 226; Crawford v. Burrell Tp., 53 Pa. 219. We, therefore, hold . . . . . that the defendant is a manufacturing corporation, within the provisions of the act of 1885, only as to so much of its capital stock as it has shown to be thus employed. The burden is upon it to make out its claim to the relief set up; if it fails, the capital stock tax of 1879 is properly collectible. It has failed with respect to the last three items of paragraph 3, and we must therefore decide a due proportion of its capital stock to be taxable."

As we understand it, a proper application of the principle of construction, above stated, should also subject to taxation that

portion of the capital invested in the " coal property " and " ore property."   Strictly speaking, both of these pertain to mining rather than manufacturing corporations.   Neither of them has any necessary connection with the latter.   True, they are sources from which corporations engaged in manufacturing iron necessarily draw their chief supply of raw materials, but those materials always may be and frequently are obtained from parties or corporations independently engaged in mining and supplying same to manufacturers of iron and others.   It is, doubtless, a great convenience and advantage for an iron manufacturing company to own and operate its own coal and iron-ore mines, but the fact that such corporation is also specially authorized to do so, is no reason why so much of its capital as is invested in such mining operations should enjoy the benefit of exemption from state tax, designed to relieve manufacturing, as contradistinguished from mining corporations, from a burden they were supposed to be illy able to bear.

A company incorporated for the exclusive purpose of manufacturing steel rails, for example, is not authorized by its charter to own and operate coal mines, iron-ore mines, or limestone quarries ; and would, of course, be obliged to procure its supplies of raw materials from outside sources.   Such mining and quarrying operations are not legally incident to the business of manufacturing; that is to say, they do not necessarily depend upon it, although, as a matter of fact, the supply of raw materials is, in one sense, incident to the process of manufacturing.   If the business of mining and supplying such raw materials is not necessarily incident to a strictly manufacturing franchise, it cannot become so because that franchise is exercised concurrently with the separate franchises of mining and quarrying. As we have seen, the corporation appellee is of a fourfold character.   It is a coal mining company, a quarrying company, an iron-ore mining company, and a manufacturing company, specifically invested with the distinct rights and privileges pertaining to each, and exercising all of them.   In the exercise of its manufacturing franchise, it finds it convenient and profitable . to become, in the main, the consumer of products resulting from the exercise of the other three.   In other words, the mining and quarrying departments, so to speak, find a convenient customer in the manufacturing department.   But, how can it be

inferred from this, that the capital employed in the mining and
quarrying departments of the business is relieved from state
tax, because capital employed in manufacturing happens to be
exempt?   Such a conclusion would be as unjust as it is illogi-
cal.   It relieves from taxation capital which the legislature
never intended to exempt, merely because it happens to belong
to a corporation which owns and controls other capital which,
for a special reason, the legislature has seen fit to exempt.

The case in hand is a striking illustration of the injustice of
any construction that would relieve the company from the pay-
ment of state tax on so much of its capital as is employed in
its mining and quarrying operations; and we know of no rule
of law that even favors, much less demands any such construc-
tion.   The spirit of the exemption clause under consideration
does not require it; nor is it demanded by the necessities of
the company.   A corporation that makes a net annual profit
of from ten to fifteen per cent on its entire capital, is not an
object of state charity, and should not, under a strained con-
struction of the exemption clause, be permitted to evade pay-
ment of its share of the public burden.   Corporations engaged
in mining coal, etc., but not authorized to engage in manufac-
turing, are subject to the payment of state tax.   Under a fair,
if not a very liberal construction of the act of 1885, § 20, we
think all that the company can reasonably claim is exemption
from tax on so much of its capital stock as has been found to
be employed in strictly manufacturing operations, as contra-
distinguished from the mining operations in which by its char-
ter it was also authorized to engage at the same time.   That
accords to it all the advantages, in the way of relief from tax-
ation, that it would have had in case it had been an exclusive-
ly manufacturing corporation.

The contention of the commonwealth that the exemption
clause of the act of 1885 does not apply to any corporation ex-
cept those engaged exclusively in manufacturing, has been
very forcibly presented by the attorney general, but upon a full
consideration of the subject, we are of opinion that the spirit if
not the letter of the act entitles the company appellee to ex-
emption from state tax on so much of its capital as was em-
ployed in exclusively manufacturing operations, in the sense
above expressed.

It therefore follows that in ascertaining the proportion of the company's capital that is taxable, we should add the two items, "coal property" and "ore property," in paragraph 3 of the learned judge's findings of fact, to the last three items in same paragraph which aggregate . . . $1,280,000

"Coal property," valued at . . . 500,000

"Ore property," " . . . . . 400,000

$2,180,000

Then taking $4,180,000, the valuation of property representing capital stock, and we have this fraction, viz.: $\frac{2,180,000}{4,180,000}=\frac{109}{209}$ of $3,000,000, capital, as the correct proportion thereof that is taxable, $1,665,114.65.

Tax, 7½ mills on that sum for 1887 . . $11,738.36

Tax, 5 mills on that sum for 1888 . . 7,825.57

Attorney-general's commissions . . . 978.19

Int. at 12 per cent from March 9th . . 684.73

Amount for which judgment should be entered $21,226.85

June 28, 1889. Judgment reversed and judgment is now entered in favor of Commonwealth and against the Lackawanna Iron & Coal Company, appellee, for twenty-one thousand two hundred and twenty-six dollars and eighty-five cents, and costs.

### LACKAWANNA I. & C. CO.'S APPEAL.

OPINION, MR. JUSTICE STERRETT:

This and Commonwealth's Appeal, No. 48, of this term, in which an opinion has just been filed, are cross appeals from the same judgment. The facts, on which appellant's contention in this case is based, are fully set forth in that opinion. For reasons there stated, neither of the specifications of error, on which the company appellant relies, is sustained.

Appeal dismissed, with costs to be paid by appellant.