## Commonwealth v. Sharon Steel Hoop Company.

*Philip S. Moyer,* Deputy Attorney-General, and *Cyrus E. Woods,* Attorney-General, for plaintiff.

*Nauman & Smith,* for defendant.

HARGEST, P. J., April 22, 1929.—This case comes before us upon an appeal from the settlement made by the Auditor General and approved by the State Treasurer Jan. 3, 1928, for tax on capital stock for the year ending Dec. 31, 1926, amounting to $3119.69. A stipulation has been filed agreeing that a trial by jury be dispensed with pursuant to the Act of Assembly of April 22, 1874, P. L. 109.

### Facts.

The facts have been separately found and only those necessary to understand this opinion are here repeated.

The appellant (for brevity hereinafter called the Hoop Company) is a domestic corporation, "formed for the purpose of the manufacture of iron or steel, or both, or of any other metal or of any article of commerce from metal or wood, or both." The Stambaugh Iron Company (hereinafter called the Iron Company) is a corporation of the State of Ohio, "formed for the purpose of mining and dealing in iron ore and coal and the several products thereof and for the purpose of manufacturing iron and steel and the various products thereof. . . ."

·During the tax year in question, the appellant owned 40 per cent. of the capital stock of the Iron Company, of a par value of $400,000 and of an actual value of $177,650.64. During the tax year, the Iron Company did not engage in any business for which it was incorporated and did not furnish from its operations any aid or support to the Hoop Company.

In the requests for findings of fact, we have denied as immaterial the following, but restate them here so that the contentions of the appellant and our discussion may be understood.

In January, 1928, the Iron Company leased a mine in Minnesota, known as the "Billings Mine." Contemporaneously with that lease, the Hoop Company purchased a blast furnace at Lowell, Ohio, known as the "Mary Furnace," and pig iron was transferred directly from the Mary Furnace to an open hearth plant of the Hoop Company. Contemporaneously, also, with the lease, the stock·of the Iron Company was issued to the Tod-Stambaugh Company, the Hoop Company and the Ohio Iron and Steel Company. On April 10, 1918, the Hoop Company acquired one-half of the ownership of the Iron Company by an agreement which required the Iron Company to furnish the Hoop Company with a minimum tonnage of 100,000 tons of ore per annum, and the Hoop Company was required to take from the Iron Company such amount of ore. Subsequently, the agreement of April 10, 1918, was modified so that the interest of the Hoop Company in the capital stock of the Iron Company was 40 per cent. The Hoop Company made its original capital investment in the Iron Company for the purpose of securing an adequate ore supply for its blast furnace. Such ore supply was furnished from the Billings Mine from 1919 to 1925, inclusive. The Iron Company discontinued operations and closed its mine during the year 1926 for economic reasons. The M. A. Hanna Company owns a controlling interest in the Tod-Stambaugh Company, and on March 27, 1926, made an agreement with the Hoop Company to furnish the ore which the Iron Company was required to furnish.

### Discussion.

Following the decision of Com. v. Sunbury Converting Works, 286 Pa. 545, which overruled Com. v. Westinghouse Airbrake Co., 251 Pa. 12, the Act of April 20, 1927, P. L. 311, was passed, which is, in part, as follows: "That whenever any corporation . . . shall own, directly or through subsidiary or sub-subsidiary corporations, shares of stock of any other corporation . . . which is engaged in a business auxiliary to the business of the owning corporation . . . upon the value of which, under existing laws, the owner of such stock would be liable to the payment of tax upon capital stock, then, in such cases, so much of the value of such shares of stock so owned as represents capital stock, which capital stock represents property located or having a legal *situs* without this Commonwealth, shall not be liable for taxation . . . but shall be excluded in determining the value of the capital stock of such owning company for purposes of taxation."

The following questions are presented:

1. Is the business of the foreign corporation "auxiliary" to the business of the owning corporation?

2. Is it necessary for the owning corporation to have more than 50 per cent. of the capital stock of the foreign corporation in order to secure the exemption under the Act of 1927?

3. Is the domestic owning corporation entitled to the exemption if the foreign corporation is not, during the tax year, "engaged in a business auxiliary to the business of the owning corporation?"

1. We are of the opinion that the chartered powers and purposes of the Iron Company, the foreign corporation, are auxiliary to the powers and purposes of the appellant domestic corporation. One who is an "auxiliary," according to the Standard Dictionary, is "one who or that which aids or helps, especially when regarded as subsidiary or accessory." The word is also therein defined as "giving or furnishing aid or support, especially in a subordinate or secondary matter; supplementary; subsidiary; accessory." The Hoop Company is incorporated "for the purpose of the manufacture of iron or steel, or both, or of any other metal or of any article of commerce from metal or wood, or both," and the Iron Company is formed "for the purpose of mining and dealing in iron ore . . . and for the purpose of manufacturing iron and steel and the various products of both." It is plain that a corporation formed to manufacture iron and steel could give aid and support to another corporation formed for the same purpose and that a corporation mining and dealing in iron ore could aid a corporation manufacturing steel.

It, therefore, follows that the business of the Iron Company is "auxiliary to the business of the owning corporation," and if there were no other facts to be considered, the appellant company would be entitled to exemption on the value of the shares of the capital stock of the Iron Company held by it.

2. The Deputy Attorney-General, as the record shows, in presenting this case, stated that the fiscal officers contended that to be an auxiliary corporation within the meaning of the Act of 1927 the domestic company must own more than 50 per cent. of the capital stock of the foreign company.

We cannot conceive of any substantial basis for such contention. The act of assembly is silent as to the proportion of the capital stock of a foreign company engaged in an auxiliary business which a domestic company may own in order to be relieved of taxation on such ownership. When a corporation brings itself within the act, so much of the value of its shares of stock as represents capital stock, which capital stock represents property located without this Commonwealth, shall not be liable to taxation.

The appellant owned 40 per cent. of the capital stock of the Iron Company, which represented property having a legal *situs* outside of the Commonwealth, and the language of the statute is that "so much of the value of such shares of stock so owned" is not taxable. There is no warrant for holding that, under the act, the owning company must own a majority of the stock of the subsidiary to construe the latter as "engaged in a business auxiliary to the business of the owning corporation." The number of shares has nothing to do with such a construction.

3. The most serious question in this case, however, is whether the appellant is entitled to the exemption because, during the tax year, the foreign corporation was not "engaged in a business auxiliary to the business of the owning corporation."

At the outstart, it must be remembered that this is a claim for exemption. Generally speaking, the capital stock of all corporations is taxed, and only those are not taxed which the Commonwealth has exempted from taxation. Taxation is the rule, exemption the exception.

In Com. *v.* Lackawanna I. & C. Co., 129 Pa. 346, 356, it is said: "Language which relieves from taxation is to be strictly construed: Miller *v.* Kirkpatrick, 29 Pa. 226; Crawford *v.* Burrell Township, 53 Pa. 219."

In Callery's Appeal, 272 Pa. 255, 272, it is said: "Where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption."

In Com. *v.* Sunbeam Water Co., 284 Pa. 180, 183, it is said: "If it [company] is to be exempted from the payment of the tax, it must clearly bring itself within the exemption provided in the act: Academy of Fine Arts *v.* Philadelphia County, 22 Pa. 496."

There is no doubt that the appellant in this case is within the general language of the statute imposing a capital stock tax and is also claiming the exemption under the Act of 1927. Therefore, its right to the exemption must be strictly construed. It is only entitled to this exemption when it owns the capital stock of a corporation which owns property located "without this Commonwealth" and "which is engaged in a business auxiliary to the business of the owning corporation." For the tax year in question the Iron Company was not engaged in a business auxiliary to the business of the Hoop Company.

We think the authorities construing the exemption for manufacturing corporations are in point. The statute relieving manufacturing companies from taxation exempts so much "of the capital stock . . . which is invested in and actually and exclusively employed in . . . manufacturing within the State; . . . it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the . . . manufacturing plant and business:" Act of July 22, 1913, P. L. 903.

In Com. *v.* Altoona Foundry and Machine Co., 18 Dauphin Co. Reps. 569, it was held by this court, construing this exemption, that "a corporation organized for manufacturing purposes whose entire capital is invested in its plant and machinery is not exempt from payment of tax on its capital stock for a year, during which its plant remained idle on account of business depression."

This court there said: "The purpose of granting the exemption seems to have been to encourage the investment and use of capital in manufacturing enterprises so that our resources might be developed, our people given employment and the public welfare advanced. The conditions of the exemption demand that the exempt capital be actually and exclusively employed in carrying on manufacturing within the State. This contemplates active operation of a manufacturing plant and the actual carrying on of manufacturing. While the defendant company had its entire capital invested in the plant and machinery, business conditions made it seem advisable not to operate during the tax year covered by the settlement. Thus the defendant failed to meet the statutory condition of carrying on manufacturing within the State."

In Com. *v.* Excelsior Brick and Stone Co., 233 Pa. 84, a manufacturing corporation was compelled to stop business by reason of the condemnation of most of its lands by the City of Philadelphia. It was held by the Supreme Court, affirming this court, that it was not exempt from taxation and that its stock could be taxed on a fair valuation of its assets consisting of its claim against the city for damages and its remaining real estate.

In the instant case, the exemption is only extended to the ownership of capital stock of a company which "is engaged in a business auxiliary to the business of the owning corporation." In the exemption for manufacturing it is only extended where the company is actually engaged in manufacturing. The two exemptions are similar, and if exemption is denied to a manufacturing company not so engaged during the tax year, it logically follows that exemption should be denied where the corporation owning property without the State is not engaged in the auxiliary business during the tax year.

The appellant argues that if the principle found in the cases of Com. *v.* Dilworth Porter & Co., 242 Pa. 194; Com. *v.* John B. Stetson Co., 17 Dauphin Co. Reps. 278; Com. *v.* Standard Underground Cable Co., 17 Dauphin Co.

Reps. 281, would be applied, it would not be denied exemption. That same argument was made to this court in the case of Com. *v.* Altoona Foundry and Machine Co., *supra.* In the cases cited the corporations were all actually engaged in manufacturing and the only question was how much capital on hand could be said to be actually and exclusively engaged in manufacturing, considering the magnitude of the business. That is to say, how much was reasonably necessary to properly conduct the manufacturing business. We see nothing in these cases that interferes with applying a strict construction to the exemption contained in the Act of 1927.

It is also contended that, because of the contractual relations existing between the Iron Company, the Tod-Stambaugh Company and the M. A. Hanna Company, the appellant company was enabled to secure the same amount of ore as if the Iron Company had, in fact, been engaged in the auxiliary business during the tax year 1926. We are of the opinion that this does not sustain the right to the exemption. If the appellant is entitled to the exemption, it is so entitled because it brings itself within the language of the statute allowing it and not because through the ramifications of contractual relations it has obtained the same benefits which it would have obtained if the Iron Company had engaged in business. The purpose and intent of the defendant in investing in the capital stock of the Iron Company is not material on the question of exemption. It is for these reasons that we have held the evidence as to such contractual relations immaterial. The question under the statute is whether the stock which it holds is stock of a corporation which is engaged in a business auxiliary to the business of the owning company and whether it is so engaged in the tax year. That, and that alone, is the test which the statute applies. If the fact that the Iron Company went into the market and bought ore to carry out its contract could obtain for the Hoop Company the exemption under the statute, it would make the language of the statute a nullity, and every domestic corporation holding the stock of foreign corporations representing property outside of the Commonwealth could set aside the plain letter of the statute by such a process of contractual relations. To so hold would be to engage in refinements for the purpose of sustaining exemption rather than applying the principle stated in Academy *v.* Philadelphia County, 22 Pa. 496, 497, that no corporation is entitled to claim exemption "unless the exemption be so clearly expressed in the statute as to admit of no other construction."

For these reasons, we are of the opinion that for the tax year in question the appellant is not entitled to exemption.

| | |
|---|---:|
| Amount of settlement was | $3119.69 |
| Defendant admits, and has paid | 2739.99 |
| | |
| Leaving a balance for which it denies liability of | 379.70 |
| Interest from March 3, 1928 (being 60 days after date of settlement) | 25.82 |
| | |
| | 405.52 |
| Attorney General's commission 5% | 20.28 |
| | |
| Total | 425.80 |

Now, April 22, 1929, judgment is hereby directed to be entered in favor of the Commonwealth and against the Sharon Steel Hoop Company, defendant, in the sum of $425.80, unless exceptions be filed within the time limited by law.                    From George R. Barnett, Harrisburg, Pa.