ROBERT L. BLAND, Judge,
dissenting.
I do not agree with the awards made in these cases or with the theory upon which they are predicated. The majority opinion is based upon a misconception of the spirit and purpose of the court act. It is unfortunate that the state should be convicted of “maintaining a public nuisance” in order to discover negligence to support its recommendations.
It is held that a statute is always construed in the light of its purpose. Chapter 20, of the acts of the Legislature of 1941, creating the court of claims, deals with claims and demands against the state, its officers and agents. A “claim,” in its *323 ordinary sense, imports the assertion, demand or challenge of something as a right. 11 Corp. Jur. 816. The claims in these cases are not based upon any right that would entitle the claimants to awards. There is no liability of the state to compensate them for the personal injuries which they have sustained or the property loss suffered. To hold otherwise would be in derogation of common law. The state has not heretofore voluntarily assumed such liability.
In the opinion in the case of Shipley v. County Court of Jefferson County, 72 W. Va. 656, Judge Poffenbarger said:
“At the common law, there was no liability for personal injury occasioned by defects in highways, for the duty of keeping them in repair was regarded as one due to the public and not to the individual, wherefore failure to perform this duty was a mere nonfeasance and not a misfeasance against the individual. Thomp. Neg. Sec. 5919.”
No suit or claim on behalf of an individual can be maintained against the state for injuries occasioned by the negligence or misfeasance of its officers or agents, except when it has been voluntarily assumed by legislative enactment. Lewis v. State, 96 N. Y. 711. The great weight of authority supports this proposition.
Whilst our statute confers jurisdiction upon the court of claims to consider ex delicto claims such power is limited to that class of claims “which, but for the constitutional immunity of the state from suit, or of some statutory restrictions, inhibitions or limitations, could be maintained in the regular courts of the state.” Sec. 12, Court Act. The claims for which awards are made in these cases do not fall within the jurisdiction of the court for the reason that they are not claims which could he maintained in the regular courts of the state. The majority opinion concedes this to be true and cites ample authority to support the well-established doctrine that a sovereign state is not liable for the negligence of its *324 officers or agents, unless such liability has been voluntarily assumed by statute. This has not been done in West Virginia.
The derogation of the sovereign power of a state by an act of the Legislature is not to be assumed. Gilman v. Sheboygan, 67 U. S. 2 Black 510. Statutes guaranteeing special privileges are to be construed strictly, and whatever is not given in unequivocal terms is withheld. Moran v. Miami County, 67 U. S. 2 Black 722. Statutes which strip a government of any portion of its prerogative should receive a strict interpretation. Academy of Fine Arts v. Philadelphia County, 22 Pa. 496. Statutes made in derogation of the common law are to be strictly construed. Melody v. Reed, 4 Mass. 471. Where a limited jurisdiction is given by the statute, the act should be construed strictly as to the extent of the jurisdiction, but liberally as to the mode of proceeding. Russell v. Wheeler, 1 Hemp. 3.
A statute authorizes the state of Massachusetts to be sued in its own courts. In the case of Murdock Parlor Grate Co. v. Commonwealth of Massachusetts, reported in 8 L. R. A., at page 399 it is held:
“An action to recover damages for injuries resulting from the negligence of a servant of the Commonwealth in the performance of his duties is not a claim within the meaning of Acts 1887, Chapter 246, which authorizes the maintenance of a suit against the Com-mcinwealth to recover ‘all claims’ against it whether at law or in equity.”
The case is interesting and sheds light, I think, upon the proper construction to be given to our court act. The opinion in that case was written by Judge Devens. He says:
“The object of the statute cannot have been to create a new class of claims for which a sovereignty has never been held responsible, and to impose a liability therefor, but to provide a convenient tribunal for the determination of claims of the character which *325 civilized governments have always recognized, although the satisfaction of them has been usually sought by direct appeal to the sovereign, or in our system of government, through the legislature.”
Continuing, Judge Devens further observes:
“It is therefore to be considered whether a demand or claim for an injury done or tort committed by a public servant in the performance of his duties is one for which a liability has been held to have been incurred by the government, even if there existed no tribunal competent, judicially, to pass upon it.
“States have always found it necessary to take and use the property of their citizens for the purpose of their government; they have assumed various responsibilities on behalf of their citizens or others; they have also always been parties to contracts for the borrowing of money, the purchase of property, the employment of labor; and the duties arising from such acts have always been fully recognized, even if judicial tribunals have not always been provided to make proper compensation for, or adjustment or payment of, the demands arising from such acts. But we do not find that demands founded on the neglect or torts of ministerial officers engaged as servants in the performance of duties which the state as a sovereign has undertaken to perform, have ever been held to render it liable. Nor does this rest upon the narrow ground that there are no means by which such obligations can be enforced, but on the larger ground that no obligations arise therefrom.”
In referring to the Massachusetts statute Judge Devens remarked:
“Had the Legislature intended to create such an obligation and voluntarily to assume in the administration of the State all the responsibility which an individual must incur in his private business, it certainly would have done so in express terms. An intent so to do, as it is in violation of the ordinary principles by which the administration of less im *326 portant bodies is ordinarily regulated, would not have been left to inference but would have been explicitly stated.”
This is my opinion with respect to our court act. if the Legislature had intended to make the state liable to respond in damages for torts generally, it would have made the fact manifest in the act. It is, therefore, important that the situation should be clarified by amendment of the statute, in order that the court may not be left in doubt as to what is actually intended.
The administration of the state’s system of highways is vested by general law in the state road, commission. In the building, repair and maintenance of such highways it is engaged in the exercise and performance of governmental functions.
The eminent Judge Cooley once declared in a dissenting opinion:
“I concur fully in the doctrine that a municipal corporation or body is not liable to any individual damnified by the exercise, or the failure to exercise, a legislative authority; and I also agree that the political divisions of the State, which have duties imposed upon them by general law without their assent, are not liable to respond to individuals in damages for their neglect, unless expressly made so by statute. Upon these two points the authorities are generally agreed, and the result is well stated in the opinion of the Chief Justice.” Detroit v. Blakely, 21 Mich. 84, 4 Am. Rep. 450.
The majority opinion in that case concludes as follows:
“We think it will require legislative action to create any liability to private suit for non-repair of public ways. Whether such responsibility should be created, and to what extent and under" what circumstances it should be enforced, are legislative questions *327 of importance and of some nicety. They cannot be solved by courts.”
I am unable to agree, as stated by the majority opinion, that the court of claims may make recommendations to the Legislature without respect to the jurisdiction conferred upon it by the court act. It is not the intention of the Legislature to invest the court of claims with unlimited jurisdiction to consider claims, as is evidenced by the various claims excluded by section 14 of the court act and those proceedings mentioned in section 3 of said act, which shall be brought and prosecuted only in the circuit court of Kanawha county. Where there is absence of jurisdiction the court of claims is without power to act; and, if it does so, such action is nugatory and void. To assume and exercise a jurisdiction not expressly conferred by statute would be a work of super-arrogation on the part of the court. I think it is the duty of the court to advise the Legislature with respect to matters of law as well as matters of fact, but I do not understand that any obligation arises upon the court to make recommendations to the Legislature not embraced within the actual jurisdiction conferred upon the court.
I cannot bring myself to believe as a result of any examination of authorities that I have made, that it was ever the Legislative intent to impede, handicap or penalize the state in the performance of its governmental functions.
I am unable to perceive anything in the record that would warrant or justify the conclusion that in the instant cases the state road commission has abused a power vested in it or been guilty of maintaining a public nuisance. The statute cited in the majority opinion has no application to such a case.
I do not agree with the statement of facts contained in the majority opinion. Nor do I believe that a prepondrance of the evidence in the case which is entitled to any value, shows any negligence on the part of the state if it could be main *328 tained that the state would under any circumstances be responsible for negligence in the premises. If this case shall be reexamined by a committee of the Legislature I would respectfully call attention to the very forceful testimony given by John V. Archer, who made an investigation of the accident and a report of the circumstances attending it, a short time after its occurrence. The oral testimony rests upon the uncertain memory of individuals who testified after a lapse of six or seven years. I believe that it is of the highest importance to the state that the Legislature should determine, definitely and for all time, whether or not it is its purpose to authorize and ratify awards such as have been made in these cases. It is my personal judgment that the records show that the injuries sustained were the result of the action of claimant, Arthur B. Perdue, driving over the embankment when he was blinded by an approaching automobile rounding the curve.