515 A.2d 1035

Father Leo Stajkowski, Appellant *v.* Carbon County Board of Assessment and Revision of Taxes, Chief Assessor of Carbon County, Appellee.

Argued June 3, 1985, before Judges ROGERS and DOYLE, and Senior Judge BLATT, sitting as a panel of three. Reargued April 9, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, BARRY and COLINS.

*Stephen Peter Vlossak, Sr.,* for appellant.

*Joseph J. Velitsky,* for appellees.

OPINION BY JUDGE DOYLE, October 6, 1986:

This is an appeal by Father Leo Stajkowski from an order of the Court of Common Pleas of Carbon County which denied Father Stajkowski's appeal from a decision of the Carbon County Board of Assessment and Revision of Taxes (Board). After an informal hearing, the Board denied Father Stajkowski's appeal of his occupational classification assessed value for 1982.

The relevant facts are not in dispute. Father Stajkowski was assessed taxes based upon the category of Clergyman which triggered an assessment rating of 250. He testified before the court of common pleas that he became a priest, but that this was not his occupation, but his vocation. He further testified that his main duty is to offer sacrifice, say Mass and celebrate sacraments and that his goal is not to acquire worldly property,[1] but to lead the members of his parish closer to God and in the process save his own soul. He further explained that his other duties include running the parish buildings and payment of church bills. He receives an annual salary of $5,700.00.[2]

---

[1] Father Stajkowski testified that he had not taken a vow of poverty.

[2] In addition to his annual salary Father Stajkowski testified that he does accept gratuities for saying certain Masses and for

On appeal Father Stajkowski raises one question for our consideration—whether the occupational assessment classification and tax as it applies to clergymen violates Father Stajkowski's First Amendment right to free exercise of his religion.[3] *See* U.S. Const. amend. I. His position is that because the occupational classification of "clergyman" is undefined it operates to tax *all* of his activities including his religious ones, hence violating his right to free exercise. He relies upon the case of *Murdock v. Pennsylvania,* 319 U.S. 105 (1943), wherein the United States Supreme Court held unconstitutional as applied a local ordinance which imposed a flat licensing tax on the privilege of canvassing or soliciting. The tax was applied to itinerant preachers distributing religious literature and such application was held to be an unconstitutional restriction upon, *inter alia,* the free exercise of religion. In addition, the tax, which was not merely a nominal fee imposed for the purpose of regulating canvassing and solicitation, had the effect of taxing individuals for delivering sermons. *Murdock* is thus inapposite here because the instant case does not involve a tax which operates to charge an individual for expressing religious beliefs. Instead, it taxes one's privilege to have an occupation. Simply stated, Father Stajkowski would pay the same amount whether he delivers a sermon or not.

The United States Supreme Court has stated that the Free Exercise Clause "recognizes the value of religious training, teaching and observance and, more particularly, the right of every person to freely choose his

---

performing wedding and funeral services. Thus, he is definitionally engaged in an "occupation" which generates income and is properly subject to an occupational tax. *See Lower Dauphin School District v. Kutler,* 76 Pa. Commonwealth Ct. 87, 463 A.2d 499 (1983).

[3] No Establishment Clause claim has been asserted in this case.

own course with reference thereto, free of any compulsion from the state." *School District of Abington Township v. Schempp,* 374 U.S. 203, 222 (1963). The *Schempp* Court further explained:

> The Free Exercise Clause . . . withdraws from legislative power, state and federal, the exertion of any restraint on the free exercise of religion. Its purpose is to secure religious liberty in the individual by prohibiting any invasions thereof by civil authority. Hence it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion.

*Id.* at 222-23.

We have read carefully all of Father Stajkowski's testimony and can find no hint that the tax has had a coercive effect upon him in the practice of his religion. At no point did he state that the tax prevented him from carrying out his religious practices or penalized him for his faith. Nor did he state that he was unable to pay the assessment because it was beyond his financial ability to do so. The tax, in fact, was only $4.25.[4]

Our Supreme Court has previously upheld the application of an occupational tax to members of the clergy. *Miller v. Kirkpatrick,* 29 Pa. 226 (1857). In so doing the *Miller* Court stated:

> The money paid to a minister for his services, and designated for his personal benefit, is very far from being mere *'spirituality'*. It is designed to supply his *temporal* wants. It is appropriated to that object alone. His services to the congregation may indeed be *spiritual;* but he would not

---

[4] At the time of the assessment in question, the applicable tax rate was seventeen mills per dollar, or one dollar and seventy cents per hundred dollars, of the assessed valuation.

be able to live long if his compensation were of the same character. *Id.* at 230 (emphasis in the original).

We do not for a minute suggest that Father Stajkowski's *reasons* for entering the priesthood emanated from anything but devoutly held spiritual convictions. But he does, by his own testimony, perform services for which he is paid. *See* footnote 2. In addition, he has presented no testimony that establishes any state coercion impairing his ability to practice his faith. Accordingly, on the facts present here, we find no constitutional violation and hence affirm the order of the trial court.[5]

### ORDER

NOW, October 6, 1986, the order of the Court of Common Pleas of Carbon County, No. 83 S 91, dated February 10, 1984 is hereby affirmed.

---

[5] Father Stajkowski also appears to be arguing that because the assessment is higher for clergymen than for some other occupations there exists an unconstitutional restriction upon religion. Our Supreme Court has held that a tax classification will be deemed reasonable if it places taxpayers in groups based upon a standard which is capable of reasonable comprehension. *Commonwealth v. Life Assurance Co. of Pennsylvania,* 419 Pa. 370, 214 A.2d 209 (1965). Additionally, it has been determined that the nature of one's work is a factor which can form a proper basis for valuing occupations. *Crosson v. Downington Area School District,* 440 Pa. 468, 270 A.2d 377 (1970). Under these precedents we believe that the tax is not unreasonable as applied in this case.

---

DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I respectfully dissent.

The First Amendment, made applicable to the states by the Fourteenth Amendment, forbids a tax on the exercise of one's religion. *Murdock v. Pennsylvania,* 319

U.S. 105 (1943). The occupation tax imposed by the County in this case does precisely that.

Father Leo testified that his priestly duties include celebrating Mass, administering the sacraments of his faith, counseling, teaching and preaching to his parishioners. In addition, Father Leo testified that he administers church property and conducts the parish financial affairs. For these activities he receives a stipend of $5,700 per year. I believe the majority misconstrues[1] the nature of Father Leo's duties when it upholds the imposition of this tax, since *all* of these activities—both temporal and sacramental—are inextricably bound to the free exercise of his religion.

The majority, citing *Murdock*, rightly concludes that our Constitution forbids a statute which would have the effect of taxing individuals for delivering sermons. The Carbon County assessment taxes Father Leo's privilege to have an occupation, which includes, *inter alia*, delivering sermons. No one would seriously argue that delivering sermons is the only activity in which a clergyman engages in pursuit of freely exercising his religion. Yet, the majority inexplicably concludes that *Murdock* is inapposite.

In *Murdock*, members of a religious organization (Jehovah's Witnesses) were taxed for canvassing and soliciting orders for religious books and pamphlets. This flat license tax was held unconstitutional. Regardless of

---

[1] The majority notes that Father Leo accepts "gratuities" for saying certain Masses and performing wedding and funeral services and concludes that he is thus engaged in an occupation. However, it is inherently the function of a clergyman to perform these services *as part of the exercise of his religion,* regardless of whether gratuities are offered or accepted. It is doubtful that a clergyman of any faith would refuse to perform these services were members of his congregation not able (or willing, for that matter) to offer such a token of gratitude.

the nomenclature or the purpose of the tax on Father Leo, its *effect and influence* is to impede the free exercise of his religion.

In *Follet v. McCormick*, 321 U.S. 573 (1944), which followed *Murdock*, an ordained minister of the Jehovah's Witnesses was convicted of violating a South Carolina town ordinance which imposed a "license on business, occupation and professions to be paid by the person or persons engaged in such business, occupation or professions . . ." within the town's corporate limits. *Id*. at 574. The United States Supreme Court struck down this tax on the minister as an "agent selling books" and stated that "preachers . . . are not engaged in commercial undertakings because they are dependent on their calling for a living. Whether needy or affluent, they avail themselves of the 'free exercise' of their religion when they enter the pulpit to proclaim their faith." *Id*. at 577.

I fail to see the substantive difference between a tax on the religious activity of distributing spiritual literature, which tax was proscribed in *Murdock* and *Follet*, and a tax on the religious "occupation" of performing the various liturgies (as well as secular duties) of Father Leo's faith.[2] Indeed, the tax here appealed is even more insidious in that it taxes Father Leo "whether he delivers a sermon or not," Majority Opinion, and thus taxes not his activities but his belief, which the First Amendment was designed to protect.

Further, I disagree with the majority's conclusion that Father Leo must show that the tax had a coercive effect upon the practice of his religion. Taxes, by their

---

[2] I recognize the difference between the flat license fee imposed on the itinerant solicitors in *Murdock* and the occupational tax imposed on Father Leo. Nonetheless, I believe both operate to impede the exercise of religion—one by taxing particular activities (bookselling) connected to a religion, and one by generally taxing a person for performing the duties of his position as a church official.

very nature, are coercive. The power to tax the exercise of a *privilege* is the power to control or suppress its enjoyment. *A. Magano Co. v. Hamilton,* 292 U.S. 40 (1934). Those who can tax the exercise of religious practice can make its exercise so costly as to deprive it of the resources necessary for its maintenance. *Murdock.* The state cannot exact a price, no matter how slight, for that which is freely granted by our Constitution.

Finally, I would not argue that clergymen have an absolute constitutional immunity from all taxes. The state may properly tax the property or income of members of religious organizations. *See, Walz v. Tax Commission,* 397 U.S. 664 (1970). *See also Schuster v. Commissioner of Internal Revenue Service,* 800 F.2d 672 (1986). However, this tax assessment taxes Father Leo *merely for being* a priest; that is, it taxes him on his belief and the practice of that belief.

Father Leo testified that he was called by God to the priesthood. It was the free exercise of his religion which led him to become a clergyman. His duties as a clergyman include secular activities which he performs, not to engage in an occupation, but as a necessary adjunct to his religious calling. Under the Free Exercise Clause, the priest or preacher is as fully protected in his function as the parishioners are in their worship. *Follet.*

For these reasons, I conclude that the tax in question is unconstitutional as applied to Father Leo.

Judge COLINS joins in this dissent.