541 A.2d 1384

**Father Leo STAJKOWSKI, Appellant,**

v.

**CARBON COUNTY BOARD OF ASSESSMENT AND REVISION OF TAXES, Chief Assessor of Carbon County, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 19, 1988.

Decided May 20, 1988.

Philip J. Murren, Harrisburg, Stephen Peter Vlossak, Sr., Jim Thorpe, for appellant.

Joseph J. Velitsky, City Sol., for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Father Leo Stajkowski, the appellant, challenges the Carbon County occupation tax levied against him, claiming it burdens his free exercise of religion in violation of the First Amendment of the United States Constitution. We agree.

The taxing authorities of Carbon County, pursuant to 72 Pa.S. § 5453.101 *et seq.*, have enacted an occupation tax. The tax is administered by valuing approximately 300 trades and occupations, then levying a tax calculated at a percentage of the value assigned to the occupation. Values assigned to various occupations ranged from a high of $1200 for brewers to a low of $30 for widows, incapacitated cripples, invalids, students, and aged, disabled and unemployed persons. Other classifications included a value of $1000 assigned to judges, surgeons, and wholesale drug dealers, $400 for salesmen, $250 for clergymen, $100 for salesladies, and $50 for housewives and domestics.

Father Stajkowski is a Roman Catholic priest who served as pastor of Sacred Heart Church in Palmerton, Carbon

County, Pennsylvania. His ecclesiastical duties included both religious and secular aspects. As a religious leader he carried out the ministry of his church by presiding at liturgical celebrations, administering sacraments, counseling, teaching, and preaching. He was also responsible for management of real estate and business affairs of the parish. He received an annual salary of $5700 and occasional gratuities for his offices at religious ceremonies.

Carbon County commissioners levied a tax on the value of all enumerated occupations at the rate of seventeen mills for the year 1982, resulting in the imposition of a $4.25 tax on the appellant as a clergyman. He appealed to the county board of assessment and revision of taxes, to the court of common pleas, then to the Commonwealth Court, 101 Pa. Cmwlth. 207, 515 A.2d 1035, all of which upheld the tax against the appellant's First Amendment challenge. We granted review to insure that the taxing authority has not placed an impermissible burden on the free exercise of religion guaranteed by the Constitution.

 The disputed tax was enacted on the authority of 72 Pa.S. § 5453.201(b), which provides:

### § 5453.201. Subjects of taxation enumerated

The following subjects and property shall as hereinafter provided be valued and assessed and subject to taxation for all county, borough, town, township, school, (except in cities), poor and county institution district purposes, at the annual rate,

. . . .

(b) All salaries and emoluments of office, all offices and posts of profit, professions, trades and occupations, and all persons over the age of eighteen years who do not follow any occupation or calling, as well as unnaturalized foreign-born persons who shall have resided within this Commonwealth for one whole year as citizens of this Commonwealth.

The tax is a true occupation tax, where "the amount of the levy varies with the assessed value of a particular mode of

employment." *Danyluk v. Bethlehem Steel Co.*, 406 Pa. 427, 429–30, 178 A.2d 609, 610 (1962). The power of the state to tax occupations in this fashion has consistently been upheld since 1857 against a variety of constitutional challenges. *Crosson v. Downington Area School District*, 440 Pa. 468, 270 A.2d 377 (1970); *Saulsbury v. Bethlehem Steel Co.*, 413 Pa. 316, 196 A.2d 664 (1964); *Gaugler v. City of Allentown*, 410 Pa. 315, 189 A.2d 264 (1963); *Danyluk v. Bethlehem Steel Co.*, 406 Pa. 427, 178 A.2d 609 (1962); *Banger's Appeal*, 109 Pa. 79 (1885); *Miller v. Kirkpatrick*, 29 Pa. 226 (1857); *Reizes v. Weller*, 95 Pa.Cmwlth. 120, 504 A.2d 971 (1986); *Commonwealth, Department of Transportation v. Hepler*, 2 Pa.Cmwlth. 516, 279 A.2d 93 (1971). The tax on the occupation itself is distinguishable from an income tax so long as the value of each occupation is measured not by actual economic return, but by social status, historical attributes, the type and quantity of work required, degree of education and training demanded, and other such real or fancied social and economic distinctions. *Crosson v. Downington Area School District*, 440 Pa. at 477, 270 A.2d at 381.

In *Miller v. Kirkpatrick, supra,* this Court considered virtually the same issue presented in this appeal. The question in *Miller* was whether an occupation tax could be levied against a clergyman, though the challenge was based on the Pennsylvania Constitution's principle of total and entire separation of church and state rather than the federal First Amendment free exercise clause. It was argued in *Miller* that a minister held his office "by divine appointment of God himself, and he therefore owes no tribute or allegiance to the state," and to tax his occupation "would tend to a union of church and state, and would be unconstitutional." 29 Pa. at 229. The tax act in *Miller*, similar to the ordinance in the present case, declared that "all offices, posts of profit, professions, trades, and occupations ... shall be valued and assessed, and subject to taxation." *Id.* at 229.

Though the tax was an occupation tax, the *Miller* Court focused on the salary earned by the clergyman.

The money paid to a minister for his services, and designed for his personal benefit, is very far from being a mere *"spirituality."* It is designed to supply his *temporal* wants. It is appropriated to that object alone. His services to the congregation may indeed be *spiritual;* but he would not be able to live long if his compensation were of the same character. Fortunately for him it is not so; but is paid in a currency as tangible and purely temporal as the wants it provides for.

*Id.* at 230 (emphasis in original). Such an analysis justifies a tax on the *income* of a minister, but not on the occupation itself.

■ Subsequent to the 1857 *Miller* decision, the Fourteenth Amendment of the United States Constitution was enacted, with the effect, inter alia, of making the First Amendment applicable to the states. Under the First Amendment, it is unconstitutional to make any law prohibiting the free exercise of religion. The free exercise clause prohibits Carbon County's tax on Father Stajkowski's calling.[1] We base this conclusion primarily on two decisions of the Supreme Court of the United States.

In *Murdock v. Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943), the U.S. Supreme Court struck down a license tax on the privilege of soliciting within a municipality, when applied to religious colporteurs disseminating religious beliefs through the sale of books and pamphlets from house to house, as an infringement on the freedom of religion. That Court stated:

We do not mean to say that religious groups and the press are free from all financial burdens of government. We have here something quite different, for example, from a tax on the income of one who engages in religious activities or a tax on property used or employed in connection with those activities. It is one thing to impose a tax on the income or property of a preacher. *It is quite another thing to exact a tax from him for the privilege of delivering a sermon.....* The power to tax the exer-

1. Appellant has raised no claim based on the Pennsylvania Constitution.

cise of a privilege is the power to control or suppress its enjoyment. Those who can tax the exercise of this religious practice can make its exercise so costly as to deprive it of the resources necessary for its maintenance. Those who can tax the privilege of engaging in this form of missionary evangelism can close its doors to all those who do not have a full purse. Spreading religious beliefs in this ancient and honorable manner would thus be denied the needy....

It is contended, however, that the fact that the license tax can suppress or control this activity is unimportant if it does not do so. But that is to disregard the nature of this tax. It is a license tax—a flat tax imposed on the exercise of a privilege granted by the Bill of Rights. *A state may not impose a charge for the enjoyment of a right granted by the federal constitution.*

*Id.* at 112–13, 63 S.Ct. at 874–75, 87 L.Ed. at 1298 (citations omitted; emphasis added).

One year after *Murdock*, the U.S. Supreme Court decided *Follett v. McCormick*, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938 (1944). The case again involved a license tax on a seller of religious books, but he was a resident rather than an itinerant, and he earned his living by the sale of books. The issue was "whether a flat license tax as applied to one who earns his livelihood as an evangelist or preacher in his home town is constitutional." *Id.* at 576, 64 S.Ct. at 719, 88 L.Ed. at 940.

The tax was held to be unconstitutional, based on the following rationale:

Freedom of religion is not merely reserved for those with a long purse. Preachers of the more orthodox faiths are not engaged in commercial undertakings because they are dependent on their calling for a living. Whether needy or affluent, they avail themselves of the constitutional privilege of a "free exercise" of their religion when they enter the pulpit to proclaim their faith. The priest or preacher is as fully protected in his function as the parishioners are in their worship. A flat license tax on that constitutional privilege would be as odious as the early "taxes on

knowledge" which the framers of the First Amendment sought to outlaw.

. . . .

This does not mean that religious undertakings must be subsidized. The exemption from a license tax of a preacher who preaches or a parishioner who listens does not mean that either is free from all financial burdens of government, including taxes on income or property. We said as much in the *Murdock* Case. 319 US p 112 [63 S.Ct. p. 874]. But to say that they like other citizens may be subject to general taxations does not mean that they can be required to pay a tax for the exercise of that which the First Amendment has made a high constitutional privilege.

*Id.* at 576–78, 64 S.Ct. at 719, 88 L.Ed. at 940–41. This reasoning applies precisely to the occupation tax levied upon Father Stajkowski as well as to the license tax at issue in *Murdock* and *Follett, supra.* By levying a tax on the occupation of clergyman, Carbon County has violated the appellant's First Amendment rights.

Accordingly, the order of the Commonwealth Court is reversed.

ZAPPALA and STOUT, JJ., did not participate in the consideration or decision of this case.