623 A.2d 882

**Rev. Robert W. BAYLOR, Appellant,**

v.

**CENTRE COUNTY BOARD OF ASSESSMENT AND REVISION OF TAXES, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1992.

Decided March 18, 1993.

Ben Novak, for appellant.

Edward S. Blanarik, Jr., for appellee.

Before CRAIG, President Judge, and COLINS, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

Reverend Robert W. Baylor (Baylor) appeals from an order of the Court of Common Pleas of Centre County (trial court), dated December 19, 1991, affirming the decision of the Centre County Board of Assessment and Revision of Taxes (board) denying his request for an exemption from an occupational assessment tax levied by the Bellefonte Area School District and the Borough of Bellefonte (Bellefonte) and denying Baylor's application for a refund of the occupational assessment tax paid by Baylor. We reverse.

Baylor was ordained a minister of the gospel in 1973. He served with the Baptist missionary in the Bahamas from 1973 to 1976. Upon completion of missionary service, Baylor was invited by pastors of five Centre County Baptist congregations to help establish the Centre County Christian Academy (Christian Academy) in 1976 to teach the children of those churches. Baylor has served as administrator of the Christian Academy since that time. The Board of Directors of the Christian Academy is composed of pastors and other members of the churches which established the school.

Pursuant to section 201 of the General County Assessment Law [1] (Law), the board classified Baylor's occupation as "Administrator Private School." Based on that classification,

---

1. Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. § 5453.201.

Bellefonte has levied an occupation tax upon Baylor since 1977. On March 23, 1990, Baylor requested from the Centre County Assessment Office an exemption from the occupation tax for the year 1989 and thereafter. Baylor requested the exemption on the basis that he is an ordained minister engaged in a religious activity which is exempt from any occupation taxes under the First Amendment of the United States Constitution. On August 23, 1990, the Centre County Assessment Office denied Baylor's request for an exemption and Baylor appealed the occupation assessment to the board.

Following an appeal hearing, the board denied Baylor's request for an exemption on November 19, 1990, stating that Baylor failed to provide evidence of his activities being any different from a public school administrator, and that there was no proof that the imposition of the tax was abridging Baylor's freedom to practice his religion or that it was a tax upon religion. Baylor appealed the board's decision to the trial court pursuant to section 704 of the Law, 72 P.S. § 5453.-704.

■ After a *de novo* hearing, the trial court entered an order denying Baylor's application for a refund of the occupational assessment taxes he had paid and affirming the board's decision denying his request for an exemption from assessment of the occupational tax. It is from that order that Baylor now appeals to this court.[2]

■ The question presented to this court on appeal is whether a local government may impose an occupation tax on an ordained minister whose occupation is an administrator of a private religious school, or is the ordained minister, in his occupation as an administrator of a religious school, exempt from occupation taxes under the First Amendment to the Constitution of the United States.

**2.** The question of entitlement to a tax exemption is a mixed one of law and fact and, absent any abuse of discretion or a lack of supporting evidence, the decision of the trial court is binding on this court. *Lutheran Social Services Tax Exemption Case,* 26 Pa.Commonwealth Ct. 580, 364 A.2d 982 (1976).

Baylor contends on appeal that an occupation tax levied upon the occupation of one engaged in a religious activity or vocation is an impermissible burden on the free exercise of religion guaranteed by the First Amendment; that an ordained minister whose occupation is that of a Christian school administrator is engaged in a religious activity which is exempt from taxation under the First Amendment; that religious education is a vital part of the exercise of religion; and that, as a protestant clergyman engaged in religious education, he is as entitled to exemption from occupation taxes as Roman Catholic priests engaged in religious education.

The board contends that an occupation tax was assessed against Baylor's position as a private school administrator, notwithstanding the fact that he is employed by the Christian Academy; therefore, the tax is not an infringement upon Baylor's right to the free exercise of religion, and there is no proof that the imposition of the tax is abridging Baylor's freedom to practice his religion or that it is a tax upon his religion.

The occupation assessment tax was levied on Baylor by Bellefonte pursuant to 72 P.S. § 5453.201 which provides:

### Subjects of taxation enumerated

The following subjects and property shall as hereinafter provided be valued and assessed and subject to taxation for all county, borough, town, township, school, (except in cities), poor and county institution district purposes, at the annual rate,

. . . .

(b) All salaries and emoluments of office, all offices and posts of profit, professions, trades and occupations, and all persons over the age of eighteen years who do not follow any occupation or calling, as well as unnaturalized foreign-born persons who shall have resided within this Commonwealth for one whole year as citizens of this Commonwealth.

Under the First Amendment of the United States Constitution, it is unconstitutional to make any law prohibiting the free

exercise of religion.[3] In *Stajkowski v. Carbon County Board,*
518 Pa. 150, 156, 541 A.2d 1384, 1387 (1988), our Supreme
Court held that an occupation tax of $4.25 levied upon a
Roman Catholic priest violated the priest's First Amendment
rights. Father Stajkowski was a Roman Catholic priest who
served as pastor of Sacred Heart Church in Carbon County,
Pennsylvania. *Stajkowski,* 518 Pa. at 151–52, 541 A.2d at
1385. His ecclesiastical duties included both religious and
secular aspects such as carrying out the ministry of his church
and managing the real estate and business affairs of the
parish. *Id.*

The *Stajkowski* court based its decision on two decisions of
the Supreme Court of the United States: *Murdock v. Penn-
sylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) and
*Follett v. Town of McCormick,* 321 U.S. 573, 64 S.Ct. 717, 88
L.Ed. 938 (1944). In *Murdock,* the United States Supreme
Court held that a license tax on the privilege of soliciting
within a municipality, when applied to religious colporteurs
disseminating religious beliefs through the sale of books and
pamphlets from house to house, was unconstitutional as an
infringement on the freedom of religion. *Murdock,* 319 U.S.
at 112–13, 63 S.Ct. at 874–75. The *Stajkowski* court relied
upon the following rationale contained in the *Murdock* opinion:

> The power to tax the exercise of a privilege is the power to
> control or suppress its enjoyment. Those who can tax the
> exercise of this religious practice can make its exercise so
> costly as to deprive it of the resources necessary for its
> maintenance. Those who can tax the privilege of engaging
> in this form of missionary evangelism can close its doors to
> all those who do not have a full purse. Spreading religious
> beliefs in this ancient and honorable manner would thus be
> denied the needy. . . .
>
> It is contended, however, that the fact that the license tax
> can suppress or control this activity is unimportant if it does
> not do so. But that is to disregard the nature of this tax.
> It is a license tax—a flat tax imposed on the exercise of a
> privilege granted by the Bill of Rights. *A state may not*

3. Baylor has raised no claim based on the Pennsylvania Constitution.

*impose a charge for the enjoyment of a right granted by the federal constitution.*

*Stajkowski,* 518 Pa. at 154–55, 541 A.2d at 1386 (quoting *Murdock,* 319 U.S. at 112–13, 63 S.Ct. at 874–75 (citations omitted; emphasis added)).

In *Follett,* the United States Supreme Court held that a flat license tax as applied to one who earns his livelihood as an evangelist or preacher in his home town was unconstitutional. *Follett,* 321 U.S. at 576–78, 64 S.Ct. at 718–20. The court in *Stajkowski* quoted the following rationale from *Follett:*

Freedom of religion is not merely reserved for those with a long purse. Preachers of the more orthodox faiths are not engaged in commercial undertakings because they are dependent on their calling for a living. Whether needy or affluent, they avail themselves of the constitutional privilege of a "free exercise" of their religion when they enter the pulpit to proclaim their faith. The priest or preacher is as fully protected in his function as the parishioners are in their worship. A flat license tax on that constitutional privilege would be as odious as the early "taxes on knowledge" which the framers of the First Amendment sought to outlaw.

. . . .

This does not mean that religious undertakings must be subsidized. The exemption from a license tax of a preacher who preaches or parishioner who listens does not mean that either is free from all financial burdens of government, including taxes on income or property. We said as much in the *Murdock* Case. 319 US p 112 [63 S.Ct. p. 874]. But to say that they like other citizens may be subject to general taxations does not mean that they can be required to pay a tax for the exercise of that which the First Amendment has made a high constitutional privilege.

*Stajkowski,* 518 Pa. at 155–56, 541 A.2d at 1386–87 (quoting *Follett,* 321 U.S. at 576–78, 64 S.Ct. at 718–20).

Based on the record in this case and our Supreme Court's decision in *Stajkowski* which was based on the reasoning in *Murdock* and *Follett,* the occupation tax levied by Bellefonte

upon Baylor has violated Baylor's First Amendment rights. Baylor, as an ordained minister and administrator of the Christian Academy, is engaged in a religious activity; therefore, he cannot be required to pay an occupation tax for the exercise of his religion without violating his rights under the Free Exercise Clause of the First Amendment.

The religious activity that Baylor is engaged in is religious education. The United States Supreme Court has acknowledged that religious education is a religious activity. In *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975), the United States Supreme Court struck down financial aid to religious schools under the Establishment Clause because the focus of such schools was religion and furthering their religious mission. The *Meek* court stated:

> The very purpose of many of those schools is to provide an integrated secular and religious education; the teaching process is, to a large extent, devoted to the inculcation of religious values and belief. See *Lemon v. Kurtzman*, 403 U.S. [602], at 616–617, 91 S.Ct. [2105], at 2113 [29 L.Ed.2d 745 (1971)].... "[T]he secular education those schools provide goes hand in hand with the religious mission that is the only reason for the schools' existence. Within the institution, the two are inextricably intertwined." *Id.* [403 U.S.], at 657, 91 S.Ct., at 2133 (opinion of Brennan, J.).

*Meek*, 421 U.S. at 366, 95 S.Ct. at 1763–64.

The record in this case is replete with testimony that shows that Baylor's secular and religious aspects of his position as administrator of the Christian Academy are intertwined with the religious mission of the school. For example, Baylor testified as follows as to the ability of a lay person to perform his duties at the Christian Academy.

Q. Can, is your position interchangeable with any other school administrator, say the superintendent of the public schools. Can you do his job? Can he do yours?

A. I think he could do, he could do my physical job but he couldn't do the spiritual side, maybe I would reverse that. I could go and do the administrative side of what he does and I'm moot [sic] presuming to be equal to these

learned men in their academic backgrounds but physically from the standpoint of my responsibilities I could do that.

From the spiritual job, they could not do mine unless they are called of God. The work that I do is a direct calling of the Lord. I believe that with all my heart and I have served in that capacity now for 20 some years and so, what I do is a spiritual nature. It is a ministry and a full-time ministry. It is not part time.

. . . .

So, no, I think there is a great differentiation between the two and the added dimension is this spiritual side. The point of what we do is not just academic. The point of our ministry is spiritual. We're dealing with the spiritual nature of a child not just the head. We're dealing with the heart.

Baylor, through his testimony, also set forth the religious mission of the Christian Academy and how its religious mission is intertwined with the secular aspects of conducting the school.

Q. Now, could you describe the purpose of the Centre County Christian Academy as a Christian school, both in relationship to what it teaches and in relation to what the church is?

A. The purpose of the school, of course, is to relate academic subject matter, our cultural heritage of this nation in light of the word of God.

Reverend Clater has testified and that would certainly be our testimony as well that for the christian [sic], all truth is God's truth. There cannot be any separation between the secular and the sacred for the christian [sic]. Every aspect of his life must be brought into conformity with the word of God.... I'm also an educationor [sic] with a desire to see the christian [sic] young people trained in that regard.

. . . .

We're commanded in the scripture that we're to become in the image of God and that requires that we have a knowledge of God and understanding of who He is. So, our school is really relating to young people who God is and how

their lives and their character ought to reflect who He is in their lives, whether it be in the athletic aspect of our school or whether it be in the academic classroom through the subject matter or be in the chapels or the Bible time, the Bible classes, Bible is infused in every subject. It's applied in every classroom and every phase of our ministry.

It is involved in the hiring of our teachers, the preparation of them, their backgrounds and all of our staff members. It infuses really everything we do. We can't separate this segment as being secular or not.

In light of the record in this case and the relevant case law interpreting the Free Exercise Clause of the First Amendment, we do not agree with the trial court's holding that Baylor's daily administration of the Christian Academy is essentially indistinguishable from the daily administration of a secular private academy or public school. As the testimony in this case clearly reveals, Baylor is an ordained minister whose calling has led him to the position of administrator of a Christian academy whose secular activities are infused with the religious mission of the academy. Baylor's calling to exercise his religion in this manner is similar to the religious colporteurs in *Murdock* disseminating their religious beliefs through the sale of books, the preacher in *Follett* preaching in his hometown, and the Roman Catholic priest in *Stajkowski* whose ecclesiastical duties included secular aspects such as managing the real estate and business affairs of the parish.

The reasoning of the courts in *Stajkowski*, *Murdock*, and *Follett* in finding that the levying of occupational and flat license taxes upon the appellants in those cases was unconstitutional is equally applicable to the issue before this court. Therefore, this court holds that Bellefonte's levy of an occupation tax upon Baylor's position as administrator of the Christian Academy is a violation of Baylor's First Amendment rights.[4]

Finally, Baylor has requested that he be granted a refund for all occupational assessment and occupational taxes levied

4. Based on this holding, we need not address Baylor's equal protection argument.

upon him by Bellefonte from 1977 to 1988. The issuance of refunds is governed by section 703.3 of the Law, 72 P.S. § 5453.703c, which provides that the board is directed to inform a taxing district to make a refund to a taxpayer for a period not in excess of six years from the date of application for refund or discovery of an error by the board. Baylor's initial application for a refund of the occupation tax was dated September 17, 1990. Accordingly, Baylor is entitled to a refund of any occupational taxes paid by him after September 17, 1984, to Bellefonte for the tax years 1984, 1985, 1986, 1987, 1988, 1989, and 1990.

Accordingly, the order of the trial court is reversed; Baylor is entitled to an exemption from paying all occupational taxes imposed upon him by Bellefonte for the tax years 1989, 1990, and all subsequent years; and all occupational taxes paid by Baylor after September 17, 1984, for the tax years 1984, 1985, 1986, 1987, 1988, 1989, and 1990 shall be refunded.

## ORDER

NOW, this 18th day of March, 1993, the order of the Court of Common Pleas of Centre County, dated December 19, 1991, at No. 1990–3122, is reversed; Reverend Robert W. Baylor is granted an exemption from paying all occupational assessment taxes and occupational privilege taxes imposed upon him by the Bellefonte Borough and the Bellefonte Area School District for the tax years 1989, 1990, and all subsequent years; and all occupational assessment taxes and occupational privilege taxes paid by Reverend Robert W. Baylor after September 17, 1984, for the tax years 1984, 1985, 1986, 1987, 1988, 1989, and 1990 shall be refunded.

PALLADINO and PELLEGRINI, JJ., dissent.